## NEW YORK OYER AND TERMINER.
### January, 1846.
### Before EDMONDS, Circuit Judge, and two Aldermen.

---

### THE PEOPLE v. PATRICK CAMPBELL.

When the prisoner was arraigned and asked if he demanded a trial, he answered that he supposed he was guilty. A juror who was then present was challenged, because of bias produced by this remark, but testifying that his mind was free from bias, and he could render a verdict according to evidence, the challenge was overruled.

To constitute the crime of murder the jury must find either an intention to kill, or an act imminently dangerous to others, and evincing a depraved mind, regardless of human life.

THE prisoner was indicted for murder, and when arraigned and asked the usual question, whether he demanded a trial? He answered, "I suppose I am guilty."

Judge — Prisoner, have you counsel?

Prisoner — No, sir; I am not able to employ any.

Judge — Do you know the difference between murder and manslaughter?

Prisoner — No, sir; I only know I struck Cogan with my hod, but I didn't mean to kill him.

The judge then ordered the clerk to enter a plea of not guilty, and assigned counsel to defend him.

On the trial, a juror was challenged for principal cause, for bias. Being sworn, he testified that he had formed no opinion as to guilt or innocence. He had heard what had occurred when the prisoner was arraigned, and thought he should have some bias when he thus offered to plead guilty, but he could render a fair verdict. The challenge was overruled.

The juror was then challenged to the favor, triers were sworn, and the same testimony given before them.

The judge charged the triers that it would never do to exclude jurors on such a ground. The law did not require the juror's mind to be free from all knowledge or impression of the case. It would be impossible to administer justice under such a rule, for at every moment that the juror was in the court-room, from the opening of the case until the closing of the trial, something would occur in the proceedings of the court that could not fail to make an impression of some sort upon an intelligent mind. But so long as a juror could render a verdict according to the evidence, he was competent. It was only when he had such a bias on his mind that he could not decide fairly, or would not be likely to do so, that he was disqualified.

But, in this case, there was another consideration: There was no doubt it would seem that the prisoner had committed a homicide — of that he had confessed himself guilty; but the real question which the jury was to try was, whether that homicide was murder or manslaughter; and upon that point the prisoner had made no confession. And it would be the height of folly to exclude a juror from trying the main question, because the prisoner raised no question as to another part of the case.

The triers found the juror competent.

The People v. Patrick Campbell.

On the trial it appeared that the prisoner and one Hart were hodmen, engaged in carrying bricks from a pile in the street on to a building that was being erected. Cogan, the deceased, was a cartman, and drove his cart close up to the pile of bricks, in order to get a load of sand. While at the head of his horse, backing the cart toward the pile of bricks, Hart picked up his hod, ran toward Cogan, and struck at him with it. Cogan intercepted the blow with one hand, and caught hold of Hart with the other. While they were thus clinched, the prisoner approached from the other side of the horse, and with his hod struck Cogan a blow on the back of his head, and knocked him down. The prisoner then filled his hod and resumed his work, and Cogan was put into his cart and carried home, where in an hour's time he died.

On a post mortem examination it appeared that there was no external appearance of a wound, but a bruised spot was found near the left ear, on the inside of the scalp, about two inches square. On removing the scalp it was found that the skull was fractured from an inch above the ear to the base of the skull. Immediately under the crack was a large clot of blood, weighing at least three ounces, pressing down on the brain. The general appearance of the patient was healthy, but the brain was compressed by the blood, and that caused the death. The bone of the skull was not depressed but a blood vessel had been broken. It required a severe blow to produce such a result.

When Cogan was carried home, the prisoner fled from the building and hid himself.

For the defense no evidence was given except that the prisoner was a sober, peaceable, industrious man, with a wife and three children, and had been at work on that building only two or three days, while the deceased had been employed there a much longer time.

*The Judge* charged the jury, that there being no dispute that the prisoner had committed the homicide, the only question for them to determine was the nature and quality of the act.

It was neither justifiable nor excusable homicide, but was either murder or manslaughter.

In order to determine that it was murder, the jury must be satisfied of one of two things, either that the prisoner, when he struck the blow, intended to kill, or that what he did was imminently dangerous to others, and evinced a depraved mind, regardless of human life.

In the inquiry whether there was an intention to kill, it would be proper for them to search for any conceivable motive for taking life, such as previous ill-feelings, or a subsisting quarrel at the moment between the deceased and the prisoner, and, on the other hand, to ask whether the prisoner's action had not been rather the promptings of a desire on his part to release his follow hod-carrier from the grasp of a man much stronger than he was.

And then, as to the other alternative, the jury must find not only that the act was imminently dangerous to others — as striking a man with a hod on the back of his head unquestionably was — but they must also find in the prisoner a depraved mind, regardless of human life. And on that point, evidence of a previous life as a peaceable, quiet man, was of great importance.

For where there was no intention to effect the death of any one, the offense could not be murder, unless there was a union of the elements of an act imminently dangerous, evincing a depraved mind, regardless of human life; such as firing a gun into a crowd, or turning loose among them a wild and savage animal, etc.

The verdict was guilty of manslaughter.